**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | |
|---|---|
| IDRIS ROBINSON, § | |
|     Plaintiff, § | |
| § | |
| v. § | |
| § | |
| KELLY DAMPHOUSSE, PRANESH § | CIVIL ACTION NO. 1:26-CV-705 |
| ASWATH, VEDARAMAN SRIRAMAN, § | |
| and THILLAINATARAJAN § | |
| SIVAKUMARAN, in their individual and § | |
| official capacities as state actors and officers § | |
| of TEXAS STATE UNIVERSITY, and § | |
| STEVEN LEE, JOHN WEISMAN, § | |
| CHARLIE AMATO, DUKE AUSTIN, § | |
| SHEILA FASKE, RUSSELL GORDY, § | |
| TOM LONG, WILLIAM SCOTT, ALAN § | |
| TINSLEY, DONOVAN BROWN, in their § | |
| official capacities as REGENTS of the § | |
| TEXAS STATE UNIVERSITY SYSTEM § | |
|     Defendants. | |

**DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S**
**MOTION FOR PRELIMINARY INJUNCTION**

TO THE HONORABLE J. ALAN ALBRIGHT:

NOW COMES Defendants, Kelly Damphousse ("Damphousse"), Pranesh Aswath ("Aswath"), Vedaraman Sriraman ("Sriraman"), and Thillainatarajan Sivakumaran ("Sivakumaran"), in their individual and official capacities as state actors and officers of Texas State University ("Texas State")(collectively, the "University Defendants"); and Steven Lee, John Weisman[1], Charlie Amato, Duke Austin, Sheila Faske, Russel Gordy, Tom Long, William

---

[1] Plaintiff had previously named Dionicio Flores, in his official capacity as a Regent of the Texas State University System, as a Defendant in this matter. Defendant Flores is no longer a Regent and on April 8, 2026, it was announced that Texas Governor Greg Abbott appointed John "Johnny" Weisman to the Texas State University System Board of Regents. Under Federal Rule of Civil Procedure 25(d), Mr. Weisman is automatically subsisted for Defendant Flores.

Scott, Alan Tinsley, and Donovan Brown, in their official capacities as Regents of the Texas State University System (collectively, the "Regents")(collectively, "Defendants") by and through the undersigned Assistant Attorney General, and file this Response in Opposition to Plaintiff's Motion for Preliminary Injunction, and respectively shows the Court as follows:

# TABLE OF CONTENTS

Table of Contents ..................................................................................................3

Table of Authorities ............................................................................................ 4

Introduction ........................................................................................................ 6

Statement of Facts ..............................................................................................7

Arguments and Authorities.................................................................................. 8

    I.       Legal standard ............................................................................... 8

    II.      Plaintiff Has Failed to Satisfy the Legal Requirements for a Preliminary Injunction. ................................................................................... 8

    a.      Plaintiff cannot demonstrate a substantial likelihood of success on the merits. .......................................................................................... 8

        i.     Non-renewal of a term contract is not termination and does not constitute an adverse employment action. .......................................... 8

        ii.   Sovereign immunity bars Plaintiff's claim against the Regents and the University defendants in their official capacities for retrospective relief....................................................................... 11

        iii.  Plaintiff's Individual-Capacity claims are independently foreclosed by Qualified Immunity. ......................................................13

    b.      Plaintiff cannot establish a substantial threat that he will suffer irreparable injury exists if the injunction is not granted................................14

        i.     Plaintiffs delay in seeking injunctive relief undermines any claim of irreparable harm. ..................................................................14

        ii.   The alleged harms to plaintiff's employment prospects flow entirely from his own voluntary conduct, not from any action by Texas State....................................................................................15

    c.      Plaintiff's claimed harms may be compensable at law but do not constitute irreparable injury. ..................................................................17

Conclusion ........................................................................................................18

Certificate Of Service......................................................................................... 20

TABLE OF AUTHORITIES

**Cases**

*Aguilar v. Tex. Dep't of Crim. Justice, Institutional Div.*,
  160 F.3d 1052 (5th Cir.1998) ..................................................................................12

*Air Evac EMS v. Tex., Dep't of Ins. Div. of Workers' Comp.*,
  851 F.3d 507 (5th Cir. 2017) ...................................................................................12

*Ashcroft v. al-Kidd*,
  563 U.S. 731 (2011) .................................................................................................14

*Bennefield v. City of Houston*,
  157 F.3d 369 (5th Cir. 1998) ...................................................................................11

*Board of Regents of State Colleges v. Roth*,
  408 U.S. 564 (1972) ...............................................................................................9, 14

*Breaux v. City of Garland*,
  205 F.3d 150 (5th Cir. 2007) ...................................................................................11

*Brown v. Callahan*, 623 F.3d 249 (5th Cir. 2010). ...................................................13

*Canal Auth. of State of Fla. V. Callaway*,
  489 F.2d 568 (5th Cir. 1974) ...................................................................................15

*City of El Paso v. Heinrich*,
  284 S.W.3d 366 (Tex. 2009) ....................................................................................12

*District of Columbia v. Wesby*,
  583 U.S. 48 (2018) ...................................................................................................14

*Edelman v. Jordan*,
  415 U.S. 651 (1974) .................................................................................................12

*Elrod v. Burns*,
  427 U.S. 347 (1976) .................................................................................................18

*Flores v. City of Palacios*,
  381 F.3d 391 (5th Cir. 2004) ...................................................................................13

*Gibson v. Kilpatrick*,
  734 F.3d 395 (5th Cir. 2013) ...................................................................................11

*Harlow v. Fitzgerald*,
  457 U.S. 800 (1982) .................................................................................................13

*Howell v. Town of Ball*,
  827 F.3d 515 (5th Cir. 2016) ...................................................................................10

*Lake Charles Diesel, Inc. v. General Motors Corp.*,
  328 F.3d 192 (5th Cir. 2003) ..................................................................................... 8

*Lowery v. Mills*,
  157 F.4th 729 (5th Cir. 2025) ..................................................................................11

*Mullenix v. Luna*,
  136 S. Ct. 305, 308 (2015). ......................................................................................13

*NiGen Biotech, LLC v. Paxton*,
  804 F.3d 389 (5th Cir. 2015) ...................................................................................13

*PCI Transportation Inc. v. Fort Worth & Western Railroad Co.*,
  418 F.3d 535 (5th Cir. 2005).................................................................................... 8

*Pearson v. Callahan*,

555 U.S. 223 (2009) ...............................................................................................................13

*Pennhurst State Sch. & Hosp. v. Halderman,*
465 U.S. 89 (1984)..................................................................................................................12

*Pierce v. Tex. Dep't of Crim. Justice, Inst. Div.,*
37 F.3d 1146 (5th Cir. 1994) .............................................................................................. 11

*Planned Parenthood of Houston & Southeast Texas v. Sanchez,*
403 F.3d 324 (5th Cir. 2005)................................................................................................ 8

*Rimkus Consulting Grp., Inc. v. Cammarata,*
255 F.R.D. 417 (S.D. Tex. 2008) .......................................................................................15

*Sambrano v. United Airlines, Inc.,*
No. 21-11159, 2022 U.S. App. LEXIS 4347 (5th Cir. Feb. 17, 2022) .........................17

*Saucier v. Katz,*
533 U.S. 194 (2001) ...............................................................................................................13

*Seminole Tribe of Fla. V. Florida,*
517 U.S. 44 (1996) ................................................................................................................ 11

*Town of Ball v. Howell,*
137 S. Ct. 815 (2017).............................................................................................................10

*Udeigwe v. Tex. Tech Univ.,*
733 F. App'x 788 (5th Cir. 2018) ...................................................................................... 11

*Wilkerson v. Univ. of N. Tex.,*
878 F.3d 147 (5th Cir. 2017).................................................................................9, 10, 11

*Will v. Michigan Dep't of State Police,*
491 U.S. 58 (1989) .................................................................................................................12

*Winter. Nat. Res. Def. Council, Inc.,*
555 U.S. 7 (2008) .................................................................................................................. 8

*Wireless Agents, LLC v. T-Mobile USA, Inc.,*
No. 3:05-cv-0094, 2006 U.S. Dist. LEXIS 36590 (N.D. Tex. June 6, 2006)...........................15

*Wreal, LLC v. Amazon.com, Inc.,*
840 F.3d 1244 (11th Cir. 2016)...........................................................................................15

**Statutes**

42 U.S.C. §§ 1983, 1988 ...............................................................................................................17

Tex. Educ. Code. § 51.943(g) ...................................................................................................... 9

### INTRODUCTION

Plaintiff, Idris Robinson, asks this court to exercise one of the most extraordinary powers in a federal court's arsenal —mandatory injunction compelling the state of Texas to continue his employment —based on claims that fail at every element of the preliminary injunction standard. The motion should be denied.

Four independent grounds compel denial. First, Plaintiff cannot demonstrate a likelihood of success on the merits because he was not terminated within the meaning of the law. By his own admissions and his own evidence, Plaintiff's fixed term non-tenured employment contract will simply expire at its natural end, and Texas State declined to offer him a new one. The non-renewal of a term contract is not equivalent to termination under controlling Supreme Court and Fifth Circuit precedent, and Plaintiff holds no cognizable property or liberty interest in a new contract he never possessed. Without an adverse employment action recognized by this Circuit, his First Amendment retaliation claim fails before it begins.

Second, the non-renewal of the tenure track contract is an entirely ordinary feature of academic employment—not a constitutionally cognizable injury. Nontenured faculty at universities across the country routinely are not offered new appointments at the conclusion of a term. Unlike those individuals, however, Plaintiff was paid out a year's worth of salary during his "terminal year" which was designed for him to seek new employment. Regardless, Plaintiff accepted a position he knew was on a term contract that required annual reappointment, with no guarantee of renewal. He is not uniquely situated, and his disappointment that a discretionary renewal was withheld does not elevate the routine academic personnel decision into a federal constitutional violation.

Third, sovereign immunity under the Eleventh Amendment bars Plaintiff's claim against

the Regents and the individual defendants in their official capacities to the extent those claims seek retrospective relief. The narrow *Ex parte Young* exception cannot salvage these claims.

Fourth, Plaintiff cannot demonstrate irreparable harm because: a) his delay of more than eight months between receiving notice of non-renewal and seeking emergency injunctive relief negates any claim of urgency; b) a preliminary injunction is an extraordinary remedy and delay in seeking it implies that harm is not truly irreparable; and c) monetary damages and reinstatement awards available under 42 U.S.C. § 1983 constitute an adequate remedy at law.

## STATEMENT OF FACTS

Plaintiff served as a non-tenured, tenure track assistant professor of philosophy at Texas State University on annual term contracts. ECF No. 1-2, ¶¶1 to 8. By the express terms of his appointment, the position was non-tenured, subject to the policies, rules, and regulations of the university and Board of Regents and required periodic review and reappointment—not automatic renewal. *Id.*, Ex. C.

On June 29, 2024, Plaintiff delivered a public talk in Asheville, North Carolina titled "Strategic Lessons from the Palestinian Resistance." ECF No. 1, ¶¶37-43. He alleges that following a social media campaign in June 2025, Provost Aswath notified Plaintiff that his contract "will not be extended beyond the 2025-2026 academic year" and that his employment would end May 31, 2026. ECF No. 1-2, Ex. P.

Plaintiff asserts that he filed a grievance, which was denied on September 17, 2025. ECF No. 1-2, ¶74. Plaintiff's counsel sent a demand letter on July 25, 2025. *Id.,* at ¶71, Ex. Q. Despite knowing the full factual record by at least September 2025, and retaining counsel, Plaintiff did not file this lawsuit or seek emergency injunctive relief until March 24, 2026—more than eight months after receiving the non-renewal notice and more than six months after exhausting his internal

7

grievance. ECF No. 1.

**ARGUMENTS AND AUTHORITIES**

### I.     Legal standard

A preliminary injunction is "an extraordinary remedy never awarded as of right." *Winter.*
*Nat. Res. Def. Council, Inc.,* 555 U.S. 7, 24 (2008). To obtain a temporary restraining order or
preliminary injunctive relief, the applicant must show (1) a substantial likelihood that he will prevail
on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not
granted, (3) that his threatened injury outweighs the threatened harm to the party whom he seeks
to enjoin, and (4) that granting the relief will serve the public interest.  *See Planned Parenthood of*
*Houston & Southeast Texas v. Sanchez*, 403 F.3d 324, 329 (5th Cir. 2005).  The Court should not
grant injunctive relief "unless the party seeking it has 'clearly carried the burden of persuasion' on
all four requirements."  *PCI Transportation Inc. v. Fort Worth & Western Railroad Co.*, 418 F.3d 535,
545 (5th Cir. 2005) (quoting *Lake Charles Diesel, Inc. v. General Motors Corp.*, 328 F.3d 192, 196
(5th Cir. 2003)).  Failure on any single element is fatal to the motion.

### II.     Plaintiff Has Failed to Satisfy the Legal Requirements for a Preliminary Injunction.

#### a.   Plaintiff cannot demonstrate a substantial likelihood of success on the merits.

*i.*  Non-renewal of a term contract is not termination and does not constitute
an adverse employment action.

Plaintiff frames the central issue as a wrongful "termination" for protected speech. But his
characterization is flatly contradicted by his own Complaint and testimony. *See* ECF No. 1 at ¶¶5,
60, 72; 1-2 at ¶68. Provost Aswath's July 8, 2025, letter states: "the decision has been reached not
to extend your contract beyond the 2025-2026 academic year." ECF No. 1-2, Ex. P. Plaintiff was
not discharged mid-contract. His term contract was simply not renewed at its natural expiration
date. This distinction is not semantics—it is legally dispositive.

8

The Supreme Court drew this precise line in *Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972), a case materially indistinguishable from this one. *Roth* involved a non-tenured professor whose one-year contract was not renewed without a statement of reasons. *Id.* at 566. The court held that the non-renewal did not implicate any constitutionally protected liberty or property interest because the terms of the contract "made no provision for renewal" and created no "legitimate claim of entitlement to reemployment." *Id.* The Texas State University System's rules and regulations reflect the same distinction. ECF No. 1-2, Ex. U.  Plaintiff's contract expired; it was not revoked mid-term.

This principal controls here. Plaintiff's appointment letter explicitly stated the position was "non-tenured" and subject to Texas State's rules and regulations. ECF No. 1-2, Ex. C. Those rules provide no guarantee of contract renewal.  A non-tenured professor on a term contract has no protected entitlement to a new contract. Without a legitimate claim of entitlement to continued employment, there is no constitutionally cognizable deprivation. *Roth*, 408 U.S. at 577-78.  Such a claim must be born out of state law or contract. Importantly, in relying on *Roth*, the Fifth Circuit recognized that "Section 51.943(g) of the Texas Education Code, which governs how public universities renew faculty contracts, limits a non-tenured teacher's rights to his or her contract." *Wilkerson v. Univ. of N. Tex.,* 878 F.3d 147, 156 (5th Cir. 2017)(citing Tex. Educ. Code. § 51.943(g)) ("Nothing in this section shall be deemed to provide a faculty member who does not hold tenure additional rights, privileges, or remedies or to provide an expectation of continued employment beyond the period of a faculty member's current contract.").

Plaintiff argues that Texas State's annual practice of renewing his contract created a de facto expectation of continued employment. Dkt. 1 at 6. However, the Fifth Circuit has flatly

rejected this argument stating "[a]nd though the University twice re-upped Wilkerson′s contract, ″[s]uccessive renewals of a teacher′s contract . . . do[] not constitute evidence of [d]e facto tenure policy″ or ″any implied agreement on the part of the school . . . that a teacher has a contractual right of renewal so long as the work performed is satisfactory.″ *Wilkerson,* 878 F.3d at 156. Moreover, a "unilateral expectation" of re-employment, however sincere, does not create a constitutional property interest. *Roth,* 408 U.S. at 577. The Supreme Court made this explicit: a property interest requires more than an "abstract need or desire" for a benefit. It requires a "legitimate claim of entitlement" grounded in an independent source such as contract or statute. *Id.* No such entitlement exists here, and Plaintiff does not allege one.

While the foregoing cases arise in the due process context, their reasoning applies with equal force here. Plaintiff holds only a term contract with no legitimate expectation of renewal and, therefore, no constitutionally protected interest in continued employment. Further, Texas State's decision not to renew his contract does not constitute an adverse employment action cognizable under federal law. Absent either a protected interest or a cognizable adverse action, Plaintiff's First Amendment retaliation claim fails as a matter of law.

To demonstrate a prima facie case for First Amendment retaliation in the employment context, a "plaintiff must establish that: (1) he suffered an adverse employment decision; (2) his speech involved a matter of public concern; (3) his interest in speaking outweighed the governmental defendant's interest in promoting efficiency; and (4) the protected speech motivated the defendant's conduct." *Howell v. Town of Ball*, 827 F.3d 515, 522 (5th Cir. 2016), *cert. denied sub. nom.*, *Town of Ball v. Howell*, 137 S. Ct. 815 (2017). In the Fifth Circuit, the recognized adverse employment actions in First Amendment retaliation cases are "discharges, demotions,

refusals to hire, refusals to promote, and reprimands." *Breaux v. City of Garland¸* 205 F.3d 150, 157 (5th Cir. 2007) (citing *Pierce v. Tex. Dep't of Crim. Justice, Inst. Div.,* 37 F.3d 1146, 1149 (5th Cir. 1994)). The non-renewal of a term contract does not appear on this list. The Fifth Circuit has declined to expand the categories of actionable adverse employment actions, expressly noting that "some things are not actionable even though they have the effect of chilling the exercise of free speech," because expanding the list may "enmesh federal courts in relatively trivial matters." *Breaux,* 205 F.3d at 157 (quoting *Bennefield v. City of Houston*, 157 F.3d 369, 376 (5th Cir. 1998)).

Here, far from inviting Robinson "to feel that he has permanent tenure, his contract provided a one-year appointment, and the bylaws and caselaw warned not to expect further ones[.]" *Wilkerson,* 878 F.3d at 157; *Udeigwe v. Tex. Tech Univ.*, 733 F. App'x 788, 792 (5th Cir. 2018)("Furthermore, [e]stablishment of a formal tenure process generally precludes a reasonable expectation of continued employment for non-tenured faculty.")(citation modified). Moreover, the Fifth Circuit has also not applied the broader Title VII definition of "adverse employment action" to First Amendment retaliation cases, *see Gibson v. Kilpatrick*, 734 F.3d 395, 400 n.4 (5th Cir. 2013), *cert. granted, judgment vacated on other grounds*, 573 U.S. 942 (2014); *Lowery v. Mills*, 157 F.4th 729, 742 (5th Cir. 2025)(petition for cert. filed, February 3, 2026), and the non-renewal of a contract whose expiration was known to both parties at the time of signing is precisely the type of personnel decision the Fifth Circuit has excluded from actionable adverse employment actions.

> ii. *Sovereign immunity bars Plaintiff's claim against the Regents and the University defendants in their official capacities for retrospective relief.*

The Eleventh Amendment bars suits against a state or its instrumentalities unless the state has consented to suit or Congress has validly abrogated immunity. *Seminole Tribe of Fla. v. Florida,* 517 U.S. 44, 54 (1996); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100-02

11

(1984).  Texas State is an arm of the State of Texas, governed by its Board of Regents, and enjoys full sovereign immunity—from suit and liability. The Regents, sued exclusively in their official capacities, stand in the same constitutional position as the State itself. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71 (1989).

Texas' sovereign immunity is not waived for claims pursuant to § 1983 or under the Texas Constitution. *Aguilar v. Tex. Dep't of Crim. Justice, Institutional Div.*, 160 F.3d 1052, 1054 (5th Cir.1998)( § 1983 does not waive Texas' sovereign immunity and Texas does not  consent to such suits); *City of El Paso v. Heinrich*, 284 S.W.3d 366, 380 (Tex. 2009) (Texas has not waived immunity for claims under the Texas Constitution seeking declaratory and injunctive relief).

The University Defendants are sued in both their official and individual capacities. Official capacity suits for monetary damages are barred by the Eleventh Amendment—they are in substance suits against the State treasury. *Edelman v. Jordan,* 415 U.S. 651, 663 (1974). To the extent Plaintiff seeks an injunction compelling these officials to take action—specifically, to reinstate Plaintiff's employment—under *Ex parte Young*, that exception applies only to "prospective relief to redress an ongoing violation of federal law." *Air Evac EMS v. Tex., Dep't of Ins. Div. of Workers' Comp.,* 851 F.3d 507, 516 (5th Cir. 2017). It does not extend to relief that is retrospective in nature or that requires the State to pay compensation for past wrongs from the State treasury. *Edelman,* 415 U.S. at 663.

Here, Plaintiff's request for reinstatement of his employment is tantamount to a mandatory injunction compelling the State to undo a completed personnel action and continue paying his salary from public funds. The practical effect of this relief is indistinguishable from a monetary judgment against the State treasury, placing it outside the scope of *Ex parte Young*. Most

importantly, however, because Plaintiff has no underlying property right in continued employment, and his suit rests on the non-renewal of a contract position rather than the termination of employment, there is no ongoing violation of federal law to redress through prospective injunctive relief. *See NiGen Biotech, LLC v. Paxton,* 804 F.3d 389, 394 (5th Cir. 2015).

### iii. *Plaintiff's Individual-Capacity claims are independently foreclosed by Qualified Immunity.*

Qualified immunity shields government officials from civil liability so long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. *Mullenix v. Luna,* 136 S. Ct. 305, 308 (2015). Courts are required to undertake a two-step analysis of the issue of qualified immunity: (1) whether a constitutional right was violated, and (2) whether the allegedly violated right was "clearly established." *Flores v. City of Palacios,* 381 F.3d 391, 395 (5th Cir. 2004). This analysis may be performed in any order, and failure to establish either element is dispositive in favor of qualified immunity. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Saucier v. Katz*, 533 U.S. 194, 201 (2001). Ultimately, government officials are entitled to qualified immunity if their conduct was objectively reasonable in light of the legal rules that were clearly established at the time of their actions. *Brown v. Callahan,* 623 F.3d 249, 253 (5th Cir. 2010).

Qualified immunity protects government officials from suit under § 1983 unless the Plaintiff demonstrates both that a constitutional violation occurred and that the violated right was "clearly established" at the time of the conduct. *Callahan,* 555 U.S. at 232. Plaintiff will likely not succeed on the merits of his claim because he cannot satisfy the first prong—that his right was clearly established at the time of the renewal decision. A right is clearly established only when

13

existing precedent places the constitutional question "beyond debate." *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011). This is a demanding standard. Officials are not required to anticipate that their conduct violated the Constitution absent "a case where an officer acting under similar circumstances… was held to have violated" the right at issue. *District of Columbia v. Wesby*, 583 U.S. 48, 64 (2018). The inquiry must be "particularized" to the specific facts confronting the officials –not framed at a high level of generality. *al-Kidd,* 563 U.S. at 742.

Here, no clearly established right to renewal of a non-tenured, term faculty contract exists in the Circuit. *See Supra,* section II.a.*i.* To the contrary, controlling precedent from the Supreme Court and the Fifth Circuit makes clear that nontenured professors on term contracts possess no protected property interest in reemployment. *Roth,* 408 U.S. at 578-79. The University Defendants were therefore entitled to rely on the entirely settled principle that declining to renew Plaintiff's contract at its natural expiration did not implicate any constitutionally protected entitlement. Assuming, arguendo, Plaintiff has sufficiently established a personal connection to the alleged conduct, the University Defendants who participated in the non-renewal decision were acting in conformity with the longstanding Supreme Court precedent. At a minimum, the qualified immunity analysis presents a substantial question that precludes a finding of likelihood of success on the individual capacity claims.

**b.   Plaintiff cannot establish a substantial threat that he will suffer irreparable injury exists if the injunction is not granted.**

     *i. Plaintiffs delay in seeking injunctive relief undermines any claim of irreparable harm.*

A preliminary injunction is available only when the threatened harm is imminent and cannot await a merits adjudication. The requirement of irreparable harm is not satisfied by a plaintiff who, having full knowledge of all material facts, sits on his rights for months before seeking

emergency relief. "[D]elay in seeking a preliminary injunction implies a lack of urgency and irreparable harm." *Wireless Agents, LLC v. T-Mobile USA, Inc.,* No. 3:05-cv-0094, 2006 U.S. Dist. LEXIS 36590, at *13 (N.D. Tex. June 6, 2006)(mem op.); *see also Rimkus Consulting Grp., Inc. v. Cammarata,* 255 F.R.D. 417, 438 (S.D. Tex. 2008)(mem op.) (denying injunctive relief where movant unreasonably delayed filing suit then requested multiple continuances).

The timeline here is stark. Plaintiff received written notice of his non-renewal on July 8, 2025. ECF No. 1-2, Ex. P. His attorney sent a demand letter on July 25, 2025. *Id.,* Ex. Q. Plaintiff filed an internal grievance on July 28, 2025, and received the final denial of his internal grievance on September 17, 2025. *Id.,* at ¶¶ 72-74. Yet, he waited until March 24, 2026, more than six months after exhausting Texas State's internal process, and nearly nine months after receiving his non-renewal notice, to file this action and seek emergency injunctive relief. This delay is fatal to his irreparable harm showing. Nay, this is not a close case. As courts in the circuit have recognized, a plaintiff who sits on his rights and fails to seek timely injunctive relief demonstrates by his own conduct that the alleged harm is neither imminent nor irreparable. *See Wireless Agents,* 2006 WL 1540587, at *13; *see also Rimkus,* 255 F.R.D. at 438. Indeed, courts have denied preliminary injunctions based on delays as short as five months. *See, e.g., Wreal, LLC v. Amazon.com, Inc.,* 840 F.3d 1244, 1248 (11th Cir. 2016) (five-month delay fatal to preliminary injunction motion). A plaintiff who truly faces the kind of career-ending, irreparable catastrophe he now describes does not wait the better part of a year to ask the court to stop it.

     ii.   *The alleged harms to plaintiff's employment prospects flow entirely from his own voluntary conduct, not from any action by Texas State.*

Even setting aside Plaintiff's delay, the specific harms he claims will befall him without a preliminary injunction are not traceable to Texas State—they are the natural and foreseeable

consequences of choices Plaintiff made entirely on his own. A plaintiff cannot manufacture irreparable harm for purposes of equitable relief by pointing to injuries that flow from his own voluntary conduct. Here every component of Plaintiff's claimed career harm fits that description. Plaintiff chose to enter one of the most constrained job markets in all of academia—he himself concedes that nationwide there are only approximately 184 tenure-track philosophy positions per hiring cycle, that each receives 125 to 150 applicants, and that there is no private sector demand for academic philosophers. ECF 1-2 at ¶¶ 85-87. That structural reality predates Texas State's actions entirely and is a known feature of the profession Plaintiff voluntarily entered. Beyond his career choice, Plaintiff chose to deliver a talk titled "Strategic Lessons from the Palestinian Resistance" at an event self-described as the "Another Carolina Anarchist Book Fair." *Id.* at ¶¶ 29-31, Ex. K. A violent altercation broke out during that event—an episode that was captured on video and by plaintiff's own account was live streamed by individuals who opposed his viewpoints and who were apparently involved in the scuffle itself. *Id.* at ¶¶38-44. Plaintiff further admits that a third party—David Moritz, someone he concedes has no connection to Texas State whatsoever—then published that video on Instagram with commentary characterizing Plaintiff as having incited violence and glorified terrorism, and that this post is what he alleges precipitated the external pressure on Texas State. *Id.* at ¶¶ 53-60. Plaintiff does not dispute that Moritz acted independently and without direction from Texas State. *Id.* at ¶53. It is therefore Moritz's post and the public perception it generated about Plaintiff's conduct at the book fair that the other universities are reacting to when they declined to hire him—not Texas State's employment decision. Plaintiff himself concedes as much, acknowledging on information and belief that Randolph College retracted his interview specifically because of the "negative publicity

16

surrounding my termination from Texas State"—i.e., the public controversy arising from the book fair and the viral post. *Id.* at ¶ 94. Any failure to hire Plaintiff suffers from third party universities reacting to that controversy is a consequence of Plaintiff's own speech and the public reaction to it, not an injury Texas State caused or that this Court can remedy by enjoining Texas State. If Plaintiff believes other universities unlawfully refuse to hire him because of constitutionally protected speech, he may have a First Amendment retaliation claim against those institutions— but that is not this case and it cannot justify preliminary injunctive relief against Texas State.

### c. Plaintiff's claimed harms may be compensable at law but do not constitute irreparable injury.

Irreparable harm means harm for which there is no adequate remedy at law and where adequate legal remedies exist, a preliminary injunction is inappropriate. *Sambrano v. United Airlines, Inc.,* No. 21-11159, 2022 U.S. App. LEXIS 4347, at *15-16 (5th Cir. Feb. 17, 2022) ("In lawsuits alleging wrongful termination or adverse employment action, the plaintiff is ordinarily not irreparably harmed. That is because the statutory relief available at the conclusion of a successful lawsuit (including reinstatement and back pay) can adequately compensate- the plaintiff for the employer's wrongful conduct."). The classic legal remedy is an award of monetary damages. Section 1983 provides Plaintiff a robust remedial scheme that includes back pay, compensatory damages, reinstatement, and attorney's fees. 42 U.S.C. §§ 1983, 1988.[2]

Plaintiff's claimed harms—lost employment income, reputational harm, and alleged difficulty finding a new position—are precisely the types of harm courts regularly address through

---

[2] Notably, back pay, front pay, and other monetary relief remain unavailable under *Ex parte Young. Jones v. Texas Juv. Just. Dep't*, 646 F. App'x 374, 376–77 (5th Cir. 2016); *see also Edelman v. Jordan,* 415 U.S. 651, 663 (1974) ("[A] suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment.");

monetary damages in employment cases. If Plaintiff prevails on the merits of his individual capacity claim, he can be fully made whole through an award of back pay, front pay, or reinstatement, supplemented by compensatory and punitive damages. These remedies are not speculative; they are expressly available under § 1983 and have been awarded in comparable First Amendment employment cases. The availability of this remedial scheme forecloses a finding of irreparable harm for preliminary injunction purposes.

Plaintiff's assertion that the philosophy academic job market is uniquely constrained does not alter this analysis. Moreover, Plaintiff's own evidence reveals that he actively participated in the 2025–2026 academic job market—an activity entirely inconsistent with a claim that he will be permanently excluded from the profession. ECF No. 1-2, ¶¶ 92–95.

Finally, Plaintiff's invocation of First Amendment irreparable harm is misplaced in this procedural posture. While the loss of First Amendment freedoms "for even minimal periods of time unquestionably constitutes irreparable injury," *Elrod v. Burns*, 427 U.S. 347, 373 (1976), that principle applies to ongoing suppression of speech—not to the aftermath of a completed personnel decision made eight months before suit was filed. Plaintiff continues to speak freely. He published a book (ECF No. 1-2, ¶ 99), actively seeks other academic positions, and has filed this very lawsuit in a public court. Texas State's decision not to renew his contract has not silenced him.

CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court DENY Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction in its entirety. Plaintiff has failed to demonstrate a likelihood of success on the merits, irreparable harm, or that the equities favor the extraordinary relief requested. Because a preliminary injunction is an

extraordinary remedy never awarded as of right, and because Plaintiff's delay alone defeats the claim of urgency, the Motion should be denied. Further, because Plaintiff did not suffer a constitutionally cognizable adverse action and his delay alone defeats the urgency of his claim, essential elements of his claim, a hearing on the Motion is unnecessary and Defendants respectfully request the Court vacate its hearing setting.

Respectfully submitted.

**KEN PAXTON**
Attorney General

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy First Assistant Attorney General

**AUSTIN KINGHORN**
Deputy Attorney General for Civil Litigation

**KIMBERLY GDULA**
Chief, General Litigation Division

*/s/ Brianna M. Krominga*
**BRIANNA M. KROMINGA**
Assistant Attorney General
Texas Bar No. 24103252
Assistant Attorneys General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(214) 290-8884 / Fax (512) 320-0667
Brianna.Krominga@oag.texas.gov

**COUNSEL FOR DEFENDANTS**

19

## <u>Certificate Of Service</u>

I hereby certify that a true and correct copy of the foregoing instrument has been served electronically through the court's CM/ECF electronic-filing system on this April 14, 2026, on all counsel of record.

*/s/ Brianna M. Krominga*
**BRIANNA M. KROMINGA**
Assistant Attorney General