UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| IDRIS ROBINSON,<br><br>            PLAINTIFF,<br><br>      V.<br><br><br>KELLY DAMPHOUSSE, PRANESH ASWATH, VEDARAMAN SRIRAMAN, and THILLAINATARAJAN SIVAKUMARAN, in their individual and official capacities as state actors and officers of TEXAS STATE UNIVERSITY, and STEVEN LEE, DIONICIO FLORES, CHARLIE AMATO, DUKE AUSTIN, SHEILA FASKE, RUSSELL GORDY, TOM LONG, WILLIAM SCOTT, ALAN TINSLEY, DONOVAN BROWN, in their official capacity REGENTS of the TEXAS STATE UNIVERSITY SYSTEM,<br>            DEFENDANTS. | Civ. No. 1:26-CV-705 |

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

Pursuant to W.D. Tex. Local Rule CV-7(f), Plaintiff Idris Robinson respectfully submits this Reply in support of his motion for preliminary injunction.

## I.   INTRODUCTION

This case presents a straightforward claim of First Amendment retaliation. Plaintiff Idris Robinson, a public university professor, engaged in protected speech as a private citizen on a matter of public concern. As a result, Defendants chose not to renew his contract, a decision that will end his employment on May 31, 2026, and effectively exclude him from his chosen profession. The First Amendment prohibits this type of retaliation, and injunctive relief is necessary to prevent irreparable harm.

1

Defendants' opposition does not alter that conclusion. Most prominently, Defendants attempt to analyze this case as if it were a due process challenge to the non-renewal of a term contract. But Professor Robinson does not claim a property interest in continued employment. He claims that Defendants declined to renew his contract because of his protected speech. The absence of a contractual or due process right to renewal is immaterial in this context.

Once the proper First Amendment framework is applied, Defendants' remaining arguments do not undermine Professor Robinson's showing. The case law, including cases cited by Defendants themselves, makes clear that non-renewal of a contract is a recognized adverse employment action in the Fifth Circuit. Defendants' sovereign immunity argument is directly contradicted by binding Fifth Circuit law recognizing reinstatement as prospective relief. And their invocation of qualified immunity is misplaced on a motion seeking only injunctive relief.

Nor do Defendants' arguments regarding irreparable harm withstand scrutiny. Professor Robinson did not unduly delay in seeking relief. Rather, he attempted to mitigate his harm through the academic hiring process before seeking judicial intervention. Only when it became clear that he would be left without comparable employment at the conclusion of his employment with Texas State ended did the irreparable nature of his injury become apparent, and he acted promptly at that point.

Because Professor Robinson has demonstrated a substantial likelihood of success on the merits and irreparable harm absent an injunction, the Court should grant his motion.

II.    **PROFESSOR ROBINSON HAS DEMONSTRATED A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS**

A.  **Non-Renewal of a Contract is an Adverse Employment Action**

Defendants argue that non-renewal of Professor Robinson's contract is not an adverse employment action. They rely on *Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972), a due process case addressing whether a non-tenured professor has a protected property interest in contract renewal, and claim that it is "materially indistinguishable" from the case at bar. (Doc. 9 at 9). But Professor Robinson has not brought a due process claim. He does not allege that he had a contractual or statutory entitlement to continued employment. Instead, he alleges that Defendants declined to renew his contract in retaliation for his protected speech. The due process framework is therefore inapposite. As the Supreme Court held in *Perry v. Sindermann*, 408 U.S. 593, 597 (1972), "even though a person has no 'right' to a valuable governmental benefit … he may not be denied the benefit for reasons that infringe constitutionally protected interests." The Court further emphasized that a professor's "lack of a contractual or tenure 'right' to re-employment … is immaterial to his free speech claim." *Id.* at 597-98. Thus, Defendants' repeated insistence that Professor Robinson lacked a property interest in continued employment does nothing to defeat his First Amendment claim.

The Fifth Circuit treats contract non-renewal as an actionable adverse employment action. *See Hague v. Univ. of Tex. Health Sci. Ctr.*, 560 Fed. Appx. 328 (5th Cir. 2014) (analyzing First Amendment retaliation claim arising from non-renewal of contract). Even the cases Defendants cite undermine their argument. Defendants cite *Gibson v. Kilpatrick*, 734 F.3d 495 (5th Cir. 2013), for the proposition that the Fifth Circuit has not applied the Supreme Court's Title VII definition of "adverse employment action" to First Amendment retaliation cases – and argue, thus, that the Fifth Circuit takes a narrower view of adverse employment actions than many of its

3

sister circuits. Yet in *Gibson* itself, the Fifth Circuit "assume[d] without deciding" that a reprimand constitutes an adverse employment action in a First Amendment retaliation case. *Id.* at 500. If a reprimand, without any loss of employment or compensation, qualifies as an adverse action, then the complete loss of one's job and income necessarily does as well. Defendants' attempt to argue otherwise cannot be squared with this authority. Nor does *Breaux v. City of Garland*, 205 F.3d 150 (5th Cir. 2000), support Defendants' position. Neither plaintiff in *Breaux* lost his job or even suffered a reduction in pay. So while the *Breaux* court cautioned against constitutionalizing "trivial" personnel matters, *id.* at 157, there is nothing trivial about ending Professor Robinson's employment at Texas State. Professor Robinson is not challenging a change in job duties, an investigation, or a workplace disagreement. Rather, he will lose his job, his income, and his philosophy career entirely as of May 31, 2026.

**B.  Sovereign Immunity Does Not Bar Plaintiff's Claim for Reinstatement**

Defendants' sovereign immunity argument is directly contradicted by Fifth Circuit case law. Citing no authority, Defendants claim that Professor Robinson's request for reinstatement is not prospective relief within the meaning of *Ex parte Young* but instead is indistinguishable from a monetary award from the state treasury. (Doc. 9 at 12). But the Fifth Circuit has explicitly held that "a request for reinstatement is sufficient to bring a case within the *Ex parte Young* exception to Eleventh Amendment immunity, as it is a claim for prospective relief designed to end a continuing violation of federal law." *Nelson v. Univ. of Tex.*, 535 F.3d 318, 324 (5th Cir. 2008). *See also Warnock v. Pecos Cty.*, 88 F.3d 341, 343 (5th Cir. 1996) ("Plaintiff's claim for prospective relief (reinstatement), however, is not barred by sovereign immunity").

Defendants also argue there is no continuing violation of law because Professor Robinson lacks a property interest in continued employment. (Doc. 9 at 12-13). But again, Professor Robinson has brought a First Amendment claim, not a due process claim. The ongoing violation

is Professor Robinson's continued exclusion from public employment because of retaliatory action for protected speech.

### C. Qualified Immunity Has No Effect on Professor Robinson's Claims for Injunctive Relief

Defendants' attempt to raise the defense of qualified immunity in response to Professor Robinson's Motion for Preliminary Injunction is misplaced. Qualified immunity "does not bear" on a plaintiff's claims for injunctive relief. *Escobarrivere v. Whitaker*, No. 21-30147, 2022 U.S. App. LEXIS 33223, at *13 (5th Cir. 2022); *see also Yates v. Stalder*, 217 F.3d 332, 333 n.2 (5th Cir. 2000) ("qualified immunity is not a defense to Plaintiffs' claims for declaratory and injunctive relief"). Because Professor Robinson's Motion seeks only injunctive relief, qualified immunity is irrelevant at this stage.

In the event the Court does wish to address Defendants' qualified immunity argument at this stage, Defendants again point to the wrong body of case law, arguing that the individual defendants are entitled to qualified immunity because "no clearly established right to renewal of a non-tenured, term faculty contract exists in the Circuit." (Doc. 9 at 14). But this is a First Amendment case, not a due process case, as much as Defendants may wish otherwise. The right in question is the right not to be terminated for engaging in constitutionally protected speech. This is a clearly established right in the Fifth Circuit. *See Davis v. McKinney*, 518 F.3d 304, 317 (5th Cir. 2008) (holding that by 2003, "both Supreme Court and Fifth Circuit law clearly proscribed retaliation by a government employer against an employee for engaging in protected speech"). *See also Cutler v. Stephen F. Austin State Univ.*, 767 F.3d 462, 473 (5th Cir. 2014) (denying qualified immunity because case law gave public university officials a "clear warning" that terminating an employee for protected speech "would violate [the employee's] First Amendment right").

### III.    PROFESSOR ROBINSON WILL SUFFER IRREPARABLE HARM WITHOUT AN INJUNCTION

### A.  Professor Robinson's Timing Does Not Undermine Irreparable Harm

Defendants argue that the timing of Professor Robinson's lawsuit defeats his claim of irreparable harm. But the cases they cite are inapposite. They are cases in which parties delayed not only in filing suit, but also further delayed in seeking injunctive relief, after the alleged harm had already begun accruing.[1] That is not what happened here.

It is only "unexcused" delay that may serve as grounds for denying a preliminary injunction. *See, e.g., Jones v Am. Council on Exercise*, 245 F. Supp. 3d 853, 868 (S.D. Tex. 2017) (11-month delay found excusable); *Piu Mgt. v Inflatable Zone*, No. H-08-2719, 2009 U.S. Dist. LEXIS 148442, at *12-15 (S.D. Tex. Dec. 18, 2009), *R and R adopted*, 2010 U.S. Dist. LEXIS 16868 (S.D. Tex. Feb. 25, 2010) (granting PI and finding delay from January 2008 to September 2009 excusable); *see also Solofill, LLC v. Rivera*, No. H-16-2702, 2017 U.S. Dist. LEXIS 17604, at *10 (S.D. Tex. Feb. 8, 2017) (noting "two ways a court may find irreparable harm and enjoin a defendant even after a delay: (1) if the plaintiff offers a good explanation or excuse for the delay, or (2) if there is a showing of bad faith on the part of the defendant").

After receiving notice of non-renewal, Professor Robinson immediately undertook reasonable steps to mitigate his harm by entering the academic job market. That process is lengthy and highly structured. Academic positions are typically posted in the early fall;

---

[1] In *Wireless Agents, LLC v. T-Mobile USA, Inc.*, No. 3:05-cv-0094, 2006 U.S. Dist. LEXIS 36590 (N.D. Tex. June 6, 2006), for example, the aggrieved company waited over one year after filing suit—and more than two years after learning of the alleged infringement—to seek injunctive relief, allowing the alleged infringement to continue throughout that period. In *Rimkus Consulting Grp., Inc. v. Cammarata*, 255 F.R.D. 417 (S.D. Tex. 2008), the plaintiff/former employer waited nearly a year after the defendant allegedly began violating his noncompete agreement to seek injunctive relief. By contrast, Professor Robinson is still in his terminal year at Texas State, which ends on May 31, 2026. He filed both his complaint and his request for injunctive relief in March 2026, within weeks of learning he had not received any academic job offers for the following academic year. His request for injunctive relief is wholly timely.

applications are due in the fall; interviews occur in late fall and early winter; and hiring decisions are made in the spring. It was only after completing that once-annual cycle, and getting no offers, that Professor Robinson could reasonably conclude that the loss of his position at Texas State would result in irreparable harm.

This period also overlapped with undersigned counsel's preparation for a two-week jury trial in Minnesota. Given the staffing constraints inherent in a small firm, that commitment necessarily limited the speed with which this action could be prepared and filed. Professor Robinson nonetheless acted promptly once irreparable harm became clear.

Courts in this Circuit have repeatedly recognized that delays of even several months do not defeat irreparable harm where the plaintiff had a good-faith reason for waiting, including efforts to mitigate harm. *See Sierra Club v. U.S. Army Corps of Eng'rs*, 482 F. Supp. 3d 543 (W.D. Tex. 2020); *ADT, LLC v. Capital Connect, Inc.*, 145 F. Supp. 3d 671 (N.D. Tex. 2015). Professor Robinson sought judicial intervention as soon as it was clear that he would suffer irreparable harm when his employment with Texas State ends in May. Had he done otherwise, Professor Robinson would not only have prematurely burdened the judicial resources of this Court; he would have risked his petition for a preliminary injunction being rendered moot in the event he secured an offer to continue his academic career as a philosopher.

**B.  Professor Robinson's Harm is Not Self-Inflicted**

Citing no authority, Defendants also argue that Professor Robinson's harm is self-inflicted, the result either of his career choice or his decision to engage in protected speech. Courts in this Circuit have recognized that "[t]he loss of opportunity to pursue one's chosen profession or to find comparable employment can constitute irreparable harm." *Portee v. Morath*, 683 F. Supp. 3d 628, 636 (W.D. Tex. 2023). This principle applies to Professor Robinson's injury. He faces

not only the loss of his current position, but the inability to secure comparable academic employment once he loses his institutional affiliation in May 2026.

Defendants' suggestion that Professor Robinson's speech renders his injury self-inflicted is particularly offensive to constitutional principles. The First Amendment exists to protect individuals from governmental censorship or punishment based on their speech. To hold that Professor Robinson's injury is self-inflicted because he chose, in his capacity as a private citizen, to express a controversial viewpoint on a matter of public concern would render that protection meaningless. The facts here are straightforward: Defendants declined to renew Professor Robinson's contract because of his protected speech, and that decision — if allowed to take effect in May 2026 — will foreclose his ability to continue in his profession. That is irreparable harm, and it is directly attributable to Defendants' conduct.

## IV.    THE BOND REQUIREMENT SHOULD BE WAIVED

Although Defendants have not briefed the issue of a bond, Professor Robinson raises it here proactively to ensure a clear record. The Court has broad discretion under Fed. R. Civ. P. 65(c) to determine whether to require security, including discretion "to require no security at all." *Kaepa, Inc. v. Achilles Corp.*, 76 F.3d 624, 628 (5th Cir. 1996). Courts routinely exercise their discretion to waive or substantially reduce the bond requirement, particularly where constitutional rights are at stake. That is the case here. Professor Robinson seeks prospective relief to prevent ongoing First Amendment retaliation. In such circumstances, courts frequently find that little or no bond is appropriate. *See, e.g., Abdullah v. County of St. Louis*, 52 F. Supp. 3d 936, 948 (E.D. Mo. 2014) (setting only a nominal bond considering the constitutional interests at stake).

Moreover, an injunction would not impose any cognizable financial burden on Defendants. Professor Robinson would simply continue in his role as a professor and receive his salary in exchange for his work. Defendants, for their part, would be required only to refrain from engaging in unconstitutional conduct: an obligation they already bear. S*ee Fellowship of Christian Univ. Students at the Univ. of Tex. at Dall. v. Elfite*, No. 1:25-cv-1411, 2025 U.S. Dist. LEXIS 204659, at *55 (W.D. Tex. Oct. 14, 2025) (noting the "lack of any real harm to Defendants by being unable to enforce an unconstitutional" policy). Under these circumstances, the Court should exercise its discretion to waive the bond requirement.

## V.    CONCLUSION

Professor Robinson has satisfied each requirement for a preliminary injunction. The non-renewal of his contract constitutes an adverse employment action. His claim for reinstatement falls squarely within the *Ex parte Young* exception to sovereign immunity. Qualified immunity has no application to the injunctive relief he seeks. And the record establishes that, absent an injunction, he will suffer irreparable harm in the form of the loss of his position and the effective derailment of his academic career. This harm is imminent, not self-inflicted, and directly attributable to Defendants' actions. For these reasons, Plaintiff Idris Robinson respectfully requests that the Court grant his Motion for Preliminary Injunction.

Dated: April 21, 2026

Respectfully submitted,

/s/ Samantha K. Harris

Samantha K. Harris*
Michael Thad Allen*
**Allen Harris PLLC**
PO Box 673
Narberth, PA 19072
(610) 634-8258
sharris@allenharrislaw.com
mallen@allenharrislaw.com

* *Admitted pro hac vice*

/s/ JT Morris

JT Morris
Texas Bar No. 24094444
**Foundation for Individual Rights and Expression**
700 Pennsylvania Avenue SE, Suite 340
Washington, DC 20003
215-717-3473, Ext. 233
jt.morris@thefire.org

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on April 21, 2026, I electronically filed the foregoing with the Clerk of Court, to be served on all parties of record via the CM/ECF system.

/s/ Samantha K. Harris

Samantha K. Harris
Allen Harris PLLC
PO Box 673
Narberth, PA 19072
(610) 634-8258
sharris@allenharrislaw.com