**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **Idris Robinson,** | § | |
| *Plaintiff,* | § | |
| | § | **CIVIL NO: 1:26-cv-00705-ADA** |
| **vs.** | § | |
| | § | |
| **Kelly Damphousse,** *in his individual* | § | **JURY TRIAL DEMANDED** |
| *and official capacities***, et al.,** | § | |
| *Defendants.* | § | |

<u>**ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**</u>

Before the Court is Plaintiff's Motion for Preliminary Injunction, Defendants' response, and Plaintiff's reply.  ECF Nos. 2; 9; 11.[1]  On May 11, 2026, the Court held oral argument and orally granted Plaintiff's motion.  This order memorializes the Court's reasonings.  The Court considered all briefing, exhibits, oral argument, and the law, even if not specifically cited below.

## I.  BACKGROUND

Plaintiff Dr. Idris Robinson is a non-tenured, but tenure track Assistant Professor of Philosophy at Texas State University.  ECF No. 9 at 7.  On June 29, 2024, Dr. Robinson delivered a speech in Asheville, North Carolina titled "Strategic Lessons from the Palestinian Resistance" ("Asheville Speech").  *Id.*  Professor Robinson in no way affiliated the talk with Texas State University.  *See* ECF Nos. 2 at 3–4; 9 at 7.  During the Asheville Speech, audience members who disagreed with Dr. Robinson's views attempted to livestream the event.  ECF No. 2 at 3.  A scuffle broke out.  *Id.*  The police report documenting the incident does not identify Dr. Robinson as a

---

[1]  The Court denied Dr. Robinson's request for a temporary restraining order contained in ECF No. 2 on March 26, 2026, and ordered the parties to set a briefing schedule so that the Court could hold a preliminary injunction hearing.  ECF No. 5.

suspect or witness. *Id.* Defendants do not contend that Dr. Robinson incited or encouraged the violence. *See* ECF No. 9 at 16.

Dr. Robinson resumed teaching in the fall without incident. After the 2024 fall semester, and again in March 2025, Dr. Robinson received excellent performance reviews. ECF No. 1-3 at 74 ("Dr. Robinson is a fantastic colleague, excellent in all areas of review. Worthy of Merit."); *id.* at 109 (2024-2025 3rd Year Tenure-Track Reappointment) (noting that the Associate Provost's Action Recommendation is to reappoint Dr. Robinson for one-year and that Dr. Robinson is "making good progress towards tenure").

On June 5, 2025, individuals who disagreed with the content of Dr. Robinson's Asheville Speech began calling for Dr. Robinson's firing on Instagram. That day, due to the posts, Texas State University began receiving complaints about Dr. Robinson. ECF No. 2 at 4–5. One day later, Dr. Robinson was placed on administrative leave due to "multiple complaints and allegations regarding an incident that occurred in the summer of 2024." ECF No. 1-3 at 239. In July 2025, Dr. Robinson was informed that "the decision has been reached not to extend your contract beyond the 2025-2026 academic year. Thus, your employment with Texas State University will end on May 31, 2026." *Id.* at 241.

That same month, Dr. Robinson filed a grievance with the University appealing the University's decision and sent a demand letter. ECF No. 2 at 6. The University denied his appeal in September 2025 without explanation. *Id.*; *see also* ECF No. 1-3 at 252. Dr. Robinson contends the University's non-renewal decision was due to the content of the Asheville Speech, which Dr. Robinson contends violates his First Amendment Rights. To date, Defendants have not offered any other reason for Dr. Robinson's non-renewal, nor do Defendants refute Dr. Robinson's contention that he was not renewed due to the Asheville Speech. *See* ECF No. 9 at 8 ("His contract

was simply not renewed at its natural expiration date."). Dr. Robinson has filed this preliminary injunction seeking to enjoin Defendants from allowing his contract to expire on May 31, 2026.

## II.    LEGAL STANDARD

To obtain a preliminary injunction, the applicant must show (1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) that his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) that granting the relief will serve the public interest. *See Planned Parenthood of Houston & Southeast Texas v. Sanchez*, 403 F.3d 324, 329 (5th Cir. 2005); ECF No. 9 at 8.

## III. ANALYSIS

Defendants do not dispute whether Dr. Robinson's Motion satisfies injunction elements 3 and 4. ECF No. 9. Thus, the Court discusses the following injunction elements at length: (1) substantial likelihood of success and (2) irreparable injury. The Court addresses those arguments in turn, and addresses other arguments raised by Defendants related to due process claims, sovereign immunity, and qualified immunity.

1. **Element 1: Dr. Robinson has shown a substantial likelihood of success.**

    i.        **Dr. Robinson proved a First Amendment retaliation violation.**

To demonstrate a prima facie case for a First Amendment retaliation claim, a plaintiff must establish that: "(1) he suffered an adverse employment [action]; (2) his speech involved a matter of public concern; (3) his interest in speaking outweighed the governmental defendant's interest in promoting efficiency; and (4) the protected speech motivated the defendant's conduct." *Howell v. Town of Ball*, 827 F.3d 515, 522 (5th Cir. 2016); ECF No. 9 at 10. Here, retaliation elements 2, 3,

and 4 are not disputed by Defendants.  *See* ECF No. 9 at 10–11.[2]  The Court, having reviewed Dr. Robinson's evidence, finds that he has met his burden of persuasion for retaliation elements 2, 3, and 4.  Dr. Robinson satisfied element 2 because the Israel-Palestine conflict is a matter of public concern.  ECF No. 2 at 1–7.  Dr. Robinson satisfied element 3 because the Asheville Speech did not disrupt university operations.  *Id.* at 12–16.   Dr. Robinson satisfied element 4 because Defendants essentially admit, and the timeline confirms, that Dr. Robinson's speech motivated Defendants' decision not to renew his contract.  *Id.* at 1–7.  Thus, the only question remaining for the Court is whether Dr. Robinson suffered an adverse employment action.

The Fifth Circuit has elaborated what constitutes an adverse employment action in the context of a First Amendment retaliation claim:

> "Adverse employment actions are discharges, demotions, refusals to hire, refusals to promote, and reprimands." *Pierce v. Texas Dep't of Criminal Justice, Institutional Div.*, 37 F.3d 1146, 1149 (5th Cir. 1994). Transfers can constitute adverse employment actions if they are sufficiently punitive, *see id.* at 1150, or if the new job is markedly less prestigious and less interesting than the old one, *see Click v. Copeland,* 970 F.2d 106, 110 (5th Cir. 1992). This court has "declined to expand the list of actionable actions, noting that some things are not actionable even though they have the effect of chilling the exercise of free speech." *Benningfield v. City of Houston*, 157 F.3d 369, 376 (5th Cir. 1998) (citing *Pierce*, 37 F.3d at 1150). The reason for not expanding the list of adverse employment actions is to ensure that § 1983 does not enmesh federal courts in "relatively trivial matters." *Dorsett v. Board of Trustees*, 940 F.2d 121, 123 (5th Cir. 1991). For example, in the education context, this court has held that "'decisions concerning teaching assignments, pay increases, administrative matters, and departmental procedures,' while extremely important to the person who dedicated his or her life to teaching, do not rise to the level of a constitutional deprivation." *Harrington*, 118 F.3d at 365 (quoting *Dorsett*, 940 F.2d at 123).

*Breaux v. City of Garland*, 205 F.3d 150, 157 (5th Cir. 2000); *see also Hague v. Univ. of Tex. Health Sci. Ctr.*, 560 Fed. Appx. 328 (5th Cir. 2014).  Defendants argue that Dr. Robinson cannot show a

---

[2] Further, Defendants do not contend that the Asheville Speech's content fell within the First Amendment's "permitted restrictions."  *Counterman v. Colorado*, 600 U.S. 66, 73 (2023); *see* ECF No. 9.

likelihood of success because he has not suffered an adverse employment action.  According to Defendants, "non-renewal of a term contract does not appear on" the *Breaux* list and, thus, is not an adverse employment action.[3]  ECF No. 9 at 11.  Defendants encourage this Court to equate non-renewal with a "trivial matter."  *See id.* at 11.  Dr. Robinson disagrees and equates refusal to renew with termination.  ECF No. 2 at 12.

The Court agrees with Plaintiff and finds that he suffered an adverse employment action. To start, the *Breaux* Court did not create a closed list to define what can, and what cannot, constitute an adverse employment action.  *Breaux* merely listed traditional examples of adverse actions and noted that other actions can be "adverse employment actions if they are sufficiently punitive." *Breaux*, 205 F.3d at 150.  Moreover, *Breaux* explained that courts should restrict expanding the list when the other actions can be considered "trivial" such as "administrative matters," "pay increases," "teaching assignments," and the like.  *Id.*

Here, the Court finds that Defendants' refusal to renew Dr. Robinson was an adverse employment action for two reasons.  First, Defendants' refusal to renew is materially indistinguishable with a refusal to hire or a discharge, which are named adverse employment actions in *Breaux*.  Regarding refusal to hire, Defendants do not dispute that Dr. Robinson applied

---

[3] Defendants' argument about Due Process claims is off base.  ECF No. 9 at 9 (citing *Board of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972)).  Dr. Robinson has not raised a Due Process claim related to this injunction.  *See* ECF No. 2.  The Court agrees with Defendants that a non-renewal does not implicate a property interest.  ECF No. 9 at 9–10 (arguing that a non-tenured professor has no constitutionally protected interest in continued employment).  But that argument, related to Due Process rights, has no effect on this Court's analysis as to whether refusing to renew Dr. Robinson was an adverse decision in a First Amendment retaliation claim for the reasons stated in *Sindermann*.  *Perry v. Sindermann*, 408 U.S. 593, 597 (1972) ("For at least a quarter-century, this Court has made clear that even though a person has no 'right' to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests— especially, his interest in freedom of speech.").

for an open position for which he was qualified.  Moreover, Defendants do not dispute that Dr. Robinson was denied renewal (or re-appointment) based solely on his exercise of his First Amendment rights.[4]  The Fifth Circuit has confirmed that a refusal to re-appoint can constitute an adverse employment action equal to a discharge.  *See Warnock v. Pecos Cnty., Tex.*, 116 F.3d 776, 779 (5th Cir. 1997) ("We conclude that, as described in Warnock's pleadings, ***the judges' decision not to re-appoint Warnock violated the First Amendment***.") (emphasis added); *see also id.* at 779 n.1 ("For our purposes, there is no difference between firing and declining to re-appoint."); *cf.* ECF No. 1-3 at 109 (Dr. Robinson's 2024-2025 ***Reappointment*** Evaluation recommending that the University "Reappoint for One Year")*.*    Here, Defendant's refusal to re-appoint or renew is materially indistinguishable with a refusal to hire or a discharge.  Thus, Dr. Robinson suffered an adverse employment action.

Second, assuming a refusal to renew (or re-appoint) is somehow distinguishable with a discharge or a refusal to hire, the Court finds that a refusal to renew is "sufficiently punitive" under *Breaux* to constitute an adverse employment action.  Under *Breaux*, a ***transfer*** can constitute an adverse employment action if it is "sufficiently punitive."  Here, Dr. Robinson was not transferred, he lost his continual employment due to exercising his First Amendment rights despite being recommended for re-appointment.  ECF No. 1-3 at 109.  Thus, the Court finds that Defendants' refusal to renew was sufficiently punitive to constitute an adverse employment action.  Next, the Court considers Defendants' remaining arguments that Dr. Robinson cannot succeed on the merits.

---

[4] Defendants seem to agree that if other universities declined to hire Dr. Robinson due to the Asheville Speech, he would have a valid First Amendment claim against those universities.  But somehow, Defendants contend, their refusal to reappoint Dr. Robinson on a yearly basis solely due to his Asheville speech is legal.  ECF No. 9 at 17; *see* ECF No. 1-3 at 109.

###### ii.    Sovereign immunity does not bar reinstatement.

Defendants argue that the Court should bar Plaintiff's request for injunctive relief because "Plaintiff's request for reinstatement … is tantamount to a mandatory injunction compelling the State to undo a completed personnel action and continue paying his salary from public funds." ECF No. 9 at 12.  Under *Ex parte Young*, past monetary relief is barred, but "prospective injunctive or declaratory relief against a state [official] is permitted."  *Nelson v. Univ. of Texas at Dallas*, 535 F.3d 318, 322 (5th Cir. 2008).  Reinstatement or re-appointment is not barred by the Eleventh Amendment.  *Warnock*, 116 F.3d 776, 778 (5th Cir. 1997) ("[T]he Eleventh Amendment does not protect state officials acting in their official capacities *from claims for reinstatement* and attorneys' fees when they violate federal law.") (emphasis added).  Here, Dr. Robinson requested (1) reinstatement under the terms of his current contract, albeit without the May 31 termination date or (2) re-appointment to a one-year contract.  *See* ECF No. 2 at 19.  The Court finds that reinstatement or re-appointment to a one-year term, as requested by Dr. Robinson, is not barred by the Eleventh Amendment.

###### iii.    Plaintiff's individual capacity claims do not bar reinstatement.

Defendants argue that qualified immunity protects the individually named defendants, and thus, Plaintiff does not have a likelihood of success.  ECF No. 9 at 13 (discussed under likelihood of success heading).  "Absolute and qualified immunity protect only individuals from claims for damages; they do not bar official-capacity claims or *claims for injunctive relief*."  *Singleton v. Cannizzaro*, 956 F.3d 773, 778 (5th Cir. 2020) (emphasis added).  Here, Plaintiff seeks injunctive relief.  ECF No. 2.  Thus, Defendants' qualified immunity defense is irrelevant.  While Dr. Robinson may be barred from receiving damages against the *individual defendants* in the future, that fact does not change the Court's analysis of (1) whether Dr. Robinson may be entitled to

injunctive relief against Defendants in their official capacities or (2) whether Dr. Robinson proved a substantial likelihood of success on his First Amendment retaliation claim. Thus, Dr. Robinson's request for an injunction is not barred by qualified immunity. In sum, the Court finds that Dr. Robinson demonstrated a substantial likelihood of success.

2. **Element 2: Dr. Robinson has shown that he faces a substantial threat of irreparable injury if the injunction is not granted**.

Dr. Robinson argues he will face irreparable harm if he is not reinstated because (1) he will likely have to change careers, which monetary relief cannot remedy, and (2) his free speech expression will be, and has been, chilled. Defendants argue that (1) Dr. Robinson's delay in seeking injunctive relief undermines any claim or irreparable harm, (2) the harms Dr. Robinson may experience are from his own conduct, not any State action, and (3) monetary awards are adequate. ECF No. 9 at 14–18. An injury is "irreparable" when "it cannot be undone through monetary remedies." *Enter. Int'l, Inc. v. Corporacion Estatal Petrolera Ecuatoriana*, 762 F.2d 464, 472 (5th Cir. 1985). The "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Here, Dr. Robinson lost First Amendment freedoms for at least a minimal period, and he continues to lose those freedoms. *See* § III.1, Merits Discussion, *supra*. For that reason alone, the Court finds that Dr. Robinson has shown irreparable harm. But the Court also agrees that Dr. Robinson has shown that he will likely lose his ability to become a tenured professor, and maybe the chance to be a philosophy professor at all, if he cannot sustain his employment while looking for another position. ECF No. 2 at 7–9. While Dr. Robinson's choice of profession is not Defendants' fault, Defendants have put Dr. Robinson's career in grave danger by violating his First Amendment rights. Thus, Dr. Robinson has shown a substantial threat of irreparable injury. *Burgess v. Fed. Deposit Ins. Corp.*, 871 F.3d 297, 304 (5th Cir. 2017) ("Burgess alleges … 'the concomitant

8

destruction of his career in his chosen profession … constitutes irreparable injury.' … Burgess has established a likelihood of success … and will be left unable to find employment in the banking industry …. Burgess has therefore established an irreparable injury.").

Last, the Court notes that Dr. Robinson's delay in seeking injunctive relief, to the extent any delay existed, does not weigh against a finding of irreparable harm here. The University denied Dr. Robinson's appeal in September 2025. Dr. Robinson filed his lawsuit and contemporaneous request for a preliminary injunction in March 2026. ECF Nos. 1; 2. Five or six months is not a delay in this situation. Moreover, Dr. Robinson explains his reasons for his delay, including attempting to mitigate the harm caused by Defendants. ECF No. 11 at 6. These proceedings have not been affected by any delay. Had Dr. Robinson filed this lawsuit one month after receiving notice that his appeal was denied, he still would have to file for a preliminary injunction prior to May 31, 2026 because it is extremely unlikely that this case would have reached a final judgment in just seven months. Thus, the Court finds that Dr. Robinson's alleged delay did not occur and, even if Dr. Robinson's time of filing was classified as delay, it does not refute the irreparable harm he faces.

3. **Elements 3 and 4: Dr. Robinson has shown that his threatened injury outweighs the threatened harm to the Defendants and that granting relief will serve the public interest.**

Defendants do not dispute Dr. Robinson's argument that the balance of harm favors Dr. Robinson or that granting relief will serve the public interest. Dr. Robinson argues that establishing a First Amendment violation meets injunction elements 3 and 4. ECF No. 2 at 19 ("Injunctions protecting First Amendment freedoms are always in the public interest.") (citing *Texans for Free Enter. V. Tex. Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013)); *see also McDonald v. Longley*, 4 F.4th 229, 255 (5th Cir. 2021) ("Finally, the balance of equities weighs heavily in plaintiffs' favor because the only harm to the [Defendant] is the inability to" violate the First Amendment, "which

is really 'no harm at all.'").  This Court agrees.  Here, because the Court finds that Dr. Robinson showed that a First Amendment violation occurred, Dr. Robinson has met its burden on injunction elements 3 and 4.  Because Mr. Robinson has met all four injunction elements, the Court grants his motion.

## IV.  CONCLUSION

For the foregoing reasons, Plaintiff's Motion for a Preliminary Injunction is **GRANTED**. Defendants, in their official capacity, are required to maintain Dr. Robinson's employment contract for one year, or until this case is resolved, whichever is sooner.  The parties may meet and confer to propose a separate injunction order consistent with this opinion and the Court's oral ruling.

Signed: 05/13/2026.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE